IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHELLE J., O/B/O, ZAJ,[1]<br><br>    **Plaintiff,**<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>    **Defendant.** | Case No. 3:21-CV-00178-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, on behalf of her minor daughter ZAJ, seeks judicial review of the final agency decision denying ZAJ's application for Supplemental Security Income (SSI) Benefits pursuant to 42 U.S.C. § 423.

### BACKGROUND

Plaintiff applied for SSI on behalf of ZAJ on February 20, 2019, alleging a disability onset date of November 1, 2017. (Tr. 58-59). The claim was initially denied on June 26, 2016 (Tr. 84-86), and again upon reconsideration on December 5, 2018. (Tr. 92-95). On August 26, 2020, a hearing was conducted. (Tr. 29). After holding a hearing, an ALJ denied the application on September 8, 2020. (Tr. 21). On December 10, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review. (Tr. 1). Thus, Plaintiff exhausted administrative

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

remedies—and then filed a timely complaint.

## ISSUE RAISED BY PLAINTIFF

Plaintiff raises the following issue: the ALJ's findings were not supported by substantial evidence where the ALJ failed to consider a significant portion of the medical and educational record in his analysis.

## LEGAL STANDARD

A child under the age of 18 is considered disabled if he or she has a medically determinable physical or mental impairment "which results in marked and severe functional limitations" and which has lasted or is expected to last for more than 12 months. 42 U.S.C. §1382c(a)(3)(C)(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §1382c(a)(3)(D).

The ALJ follows a three-step sequential analysis which is set forth in 20 C.F.R. §416.924:

1. Is the child claimant engaged in substantial gainful activity? If so, she is not disabled.

2. Does the child have an impairment or combination of impairments that is "severe?" If not, she is not disabled.

3. Does the impairment or combination of impairments meet, medically equal, or functionally equal the severity of a listed impairment? If not, she is not disabled.

At step two, an impairment is not "severe" if it is a slight abnormality or a

combination of slight abnormalities that cause no more than minimal functional limitations. 20 C.F.R. §416.924(c).

The listed impairments for children are located at 20 C.F.R. Part 404, Subpart P, Appendix 1, Part B. At step three, in order to determine whether the child's impairments functionally equal a listing, the agency considers how the child functions in six domains:

(1) acquiring and using information;

(2) attending and completing tasks;

(3) interacting and relating with others;

(4) moving about and manipulating objects;

(5) caring for herself; and

(6) health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

The child is at listing-level severity where she has marked limitation in two domains of functioning, or extreme limitation in one domain. 20 C.F.R. §416.926a(d). A marked limitation is one which "seriously" interferes with the child's functioning, while an extreme limitation "very seriously" interferes with the child's functioning. 20 C.F.R. §416.926a(e)(2) & (3). In assessing the severity of a child's impairments, the ALJ considers, among other factors, her functioning in school and the effects of medication and treatment. 20 C.F.R. §§ 416.924a(b)(9), 416.926a(e)(2).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Accordingly, this Court is not tasked

with determining whether or not Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). While judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### DECISION OF THE ALJ

The ALJ followed the three-step analytical framework described above. He determined that ZAJ had not engaged in substantial gainful activity since the application date. She was born in 2005 and was an adolescent when the application was filed; she was still an adolescent at the time of the ALJ's decision.[2] The ALJ found that ZAJ had three severe impairments, autism spectrum disorder, attention deficit hyperactive disorder (ADHD), and obsessive-compulsive disorder (OCD). These impairments did not meet or medically equal a listed impairment. The ALJ further determined that these

---

[2] An adolescent is between 12 and 18 years old. 20 C.F.R. § 416.926a(g)(2)(v).

impairments did not functionally equal a listing, because ZAJ did not have either "marked" limitations in two domains of functioning or "extreme" limitations in one domain of functioning. (Tr. 14).

With regard to the six domains of functioning, he found that ZAJ had a marked limitation in interacting and relating with others. The ALJ also found that ZAJ had less than a marked limitation in the ability to care for herself, but he found that ZAJ had no limitation in the other four areas. Therefore, the ALJ concluded that she was not disabled. (Tr. 12-21).

## EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

### 1.     Evidentiary Hearing

ZAJ appeared telephonically at the hearing in August 2020 with her mother (Plaintiff) and a non-representative attorney. (Tr. 29).

At the time of the hearing, ZAJ was 14-years old and a freshman in high school. (Tr. 38). During the hearing, ZAJ answered in short sentences. ZAJ became easily upset and handed her mother the phone, during a nonconfrontational question:

**ALJ:** So who takes you to school? Is it your mom or is it somebody else? Do you get to school? Okay, [ZAJ], can you hear me? Are you still on the phone?

**WTN:** Oh, no, she handed it to me. I'm sorry. Do you want me to try again? No. She says no.

**ALJ:** Okay.

**WTN:** I'm sorry.

**ALJ:** That's okay. Well, could you try again? I just want to—if I could just talk with her and give her – and give Ms. Beardslee an opportunity to talk with her, I'd appreciate it.

**WTN:** Okay. Can you talk at least one more time?

**CLMT:** I don't want to answer that.

**WTN:** You don't answer what? What is it? What don't you want to answer, honey? Come on. Try to answer a couple more questions? Can you answer a couple more?

**CLMT:** No.

**WTN:** Okay. Well, talk to the Judge, okay?

**CLMT:** Well, can you answer him?

**WTN:** No, I can't answer him. You need to answer him, okay?

**CLMT:** No.

**WTN:** Please? For Mommy?

**CLMT:** No.

**WTN:** Please. It won't take that long. Okay. Maybe she will.

**CLMT:** No.

**WTN:** Please? Say you're there.

**CLMT:** No.

**WTN:** Okay. No, she's on [INAUDIBLE], and she's kind of shaky, so I don't know. I don't think she's going to do it anymore. I'm sorry.

(Tr. 42-43).

Plaintiff testified that ZAJ was doing better in the eighth grade when she had ABA

therapy. (Tr. 45). ZAJ was unable to eat in the cafeteria because there was too much stimuli. (Tr. 50). ZAJ has meltdowns when her mother tries to take away any of her toys as she has gotten older. (Tr. 51). She has trouble transitioning from one activity to another. (Tr. 54).

ZAJ took Clonidine, Melatonin, Focalin, Citalopram, and Celexa. (Tr. 55-56). Her mother noted that when ZAJ got on the Citalopram, she was able to tun on the shower by herself. (Tr. 56).

### 2.  School Records

In December 2018, staff from Mt. Carmel Junior High School provided a Functional Behavioral Assessment of ZAJ (Tr. 628). As for as ZAJ's strengths, they noted that she has good academic skills and "has shown more interest in participating in classes that require large group activities such as P.E., music/choir, etc." (*Id.*). They noted, however, that ZAJ "refuses to perform a variety of tasks (complete assignments, transition to a different task, activity, or environment, attend therapy, etc.)" (*Id.*). "She ignores staff and peers, verbally refuses, and quickly escalates to wailing, yelling, crying, and sometimes call peers and staff inappropriate names or using inappropriate language." (*Id.*).

On April 16, 2019, Amanda Riggs ("Riggs"), ZAJ's special education teacher, completed a Teacher Questionnaire. (Tr. 195). The form instructs the teacher to consider the rating in the context of what is age appropriate for the child. When evaluating whether ZAJ had problems with interacting and relating with others, Riggs noted that ZAJ had "a serious problem" playing cooperatively with other children and making and

keeping friends. (Tr. 198). There were approximately seven other areas where Riggs rated ZAJ to have a "slight problem." (*Id.*). Riggs noted that "[ZAJ] is very independent unless her schedule changes [and] if that happens she needs a lot of assistance to get back on track." (*Id.*).

When evaluating whether ZAJ had problems caring for herself, Riggs reported that ZAJ had "an obvious problem" handling frustration appropriately; being patient when necessary; identifying and appropriately asserting emotional needs; responding appropriately to changes in own mood; and using appropriate coping skills to meet daily demands of school environment. (Tr. 200). Riggs explained that "[ZAJ] can get very agitated over classmates making noises (coughing, sniffling, etc.) [and] [w]hen this happens, she becomes angry and starts screaming in class [and] [i]t is very hard to get her to deescalate and she will often refuse to leave the environment." (*Id.*).

On October 28, 2019, Riggs completed another Teacher Questionnaire. (Tr. 227). When evaluating whether ZAJ had problems with acquiring and using information, Riggs rated that ZAJ had a "very serious problem" understanding and participating in class discussions; providing organized oral explanations and adequate descriptions; and applying problem-solving skills in class discussions. (Tr. 221). Next, Riggs recorded that ZAJ had problems attending and completing tasks. (Tr. 222). Similar to her last questionnaire, Riggs noted that ZAJ had "a serious problem" playing cooperatively with other children; expressing anger appropriately; asking permission appropriately; interpreting meaning of facial expression, body language, hints, sarcasm; and using adequate vocabulary and grammar to express thoughts/ideas in general, everyday

conversation. (Tr. 223). Riggs reported that ZAJ had a "very serious problem" making and keeping friends; seeking attention appropriately; relating experiences and telling stories. (*Id.*).

When evaluating whether ZAJ had problems caring for herself, Riggs again reported that ZAJ had "an obvious problem" handling frustration appropriately; being patient when necessary; identifying and appropriately asserting emotional needs; and using appropriate coping skills to meet daily demands of school environment. (Tr. 225). Riggs also reported that ZAJ had a "very serious problem" responding appropriately to changes in own mood. (*Id.*).

### 3. Medical Records

ZAJ was diagnosed by Dr. Durr with autism spectrum disorder in February 2010. In March 2018, Harsha Autism Center developed an Initial Treatment Plan for ZAJ (Tr. 387). Lance Moore, MA, BCBA ("Moore") noted that ZAJ is "a risk for potentially violent tantrums in the school and community settings whenever she is experiencing sudden changes in her schedule that present new task demands and/or she is not getting her needs met." (Tr. 400).

In September 2018, Harsha Autism Center developed an Initial Treatment Plan for ZAJ (Tr. 372). Moore again noted that ZAJ is "a risk for potentially violent tantrums in the school and community settings whenever she is experiencing sudden changes in her schedule that present new task demands and/or she is not getting her needs met." (Tr. 383).

In February 2019, Harsha Autism Center developed an Initial Treatment Plan for

ZAJ (Tr. 358). Moore again noted that ZAJ is "still a risk for potentially violent tantrums in the school and community settings whenever she is experiencing sudden changes in her schedule that present new task demands and/or she is not getting her needs met." (Tr. 371).

In April 2019, Paras Harshawat, M.D. ("Dr. Harshawat") observed that ZAJ was calm and compliant during the session. (Tr. 554). Dr. Harshawat noted that her behavior was normal. (Tr. 557). ZAJ's attention was normal. (*Id.*). Her thought process was also normal. (*Id.*). Dr. Harshawat reported that ZAJ had normal speech and cognition. (Tr. 557-558).

On June 6, 2019, Jonathan Thomas-Stagg, Ph. D. ("Stagg") performed a mental status examination on ZAJ (Tr. 480-484). Stagg concluded that "[she] is clearly of average intelligence or higher." (Tr. 483). "Having these well-developed intellectual skills does not necessarily mean that [ ] [she] has been successful at navigating a neuro-typical world." (*Id.*). "She still struggles with communicating her needs, taking care of her own personal needs and activities of daily living, and participating in behavioral routines (e.g., staying organized at school) without some significant support." (*Id.*).

In June 2019, Harsha Autism Center provided a Treatment Plan Update. (Tr. 441). Moore noted that ZAJ is "still a risk for potentially violent tantrums in the school and community settings whenever she is experiencing sudden changes in her schedule that present new task demands and/or she is not getting her needs met." (Tr. 455).

In September 2019, Harsha Autism Center provided a Treatment Plan Update. (Tr. 507). Laura Beauchamp, M. Ed. ("Beauchamp") noted that ZAJ is "still a risk for

potentially violent tantrums in the school and community settings whenever she is experiencing sudden changes in her schedule that present new task demands and/or she is not getting her needs met." (Tr. 520).

In October 2019, Dr. Harshawat observed that ZAJ was calm and cooperative during the session. (Tr. 560). ZAJ had "shown some improvement in her interactions with her peers and teachers." (*Id.*). ZAJ stated that she likes her teachers and is making new friends. (*Id.*). Dr. Harshawat noted that she is having difficulty with focusing and paying attention in the classroom. (*Id.*). As a result, Dr. Harshawat increased Focalin XR to 15 mg every morning. (*Id.*).

On February 4, 2020, Dr. Harshawat observed that ZAJ was calm and cooperative during the session. (Tr. 603). ZAJ was doing well at school and completing her schoolwork. (*Id.*). Dr. Harshawat noted that her behavior was normal. (Tr. 606). ZAJ's attention was normal. (*Id.*). Her thought process was also normal. (*Id.*). Dr. Harshawat reported that ZAJ had normal speech and cognition. (Tr. 606-607).

On June 16, 2020, professionals from Thrive Wellness noted that "[t]he patient has been diagnosed with high functioning Autism." (Tr. 594). Later in June 2020, Audrey Faulstich, APRN ("Faulstich") observed that ZAJ has anxiety disorder, anxiety symptoms, attention-deficit disorder, and autism spectrum disorder. She noted that ZAJ's "level of stress was severe, and included other psychosocial environmental problems." (Tr. 592).

### 4. State Agency Consultants' Opinions

In June 2019, state agency consultant Howard Tin, Psy. D, assessed the severity of

ZAJ's impairment based on a review of the record. (Tr. 58-67). He determined that while her impairment is severe—it did not meet, medically equal, or functionally equal the Listings. (Tr. 63). In December 2019, M. W. DiFonso, Psy.D., also assessed the severity of ZAJ' impairment based on a review of the record. She considered whether ZAJ's impairment met or functionally equaled Listing 112.10. She determined that ZAJ had only a marked limitation in interacting and relating with others and a less than marked limitation in caring for herself. (Tr. 76-77). She had no limitations in the four other domains. (*Id.*).

## DISCUSSION

### I. Evidence that Demonstrates an Extreme Limitation Interacting and Relating with Others

According to Plaintiff, the ALJ overlooked evidence that demonstrates an extreme limitation interacting and relating with others. (Doc. 19, pp. 13-15). Specifically, Plaintiff argues that "the ALJ neglected to include the observations that [ZAJ] was repeatedly violent with teachers and peers during her initial assessment, as she had hit and kicked others when engaging in tantrum-behaviors." (*Id.* at p. 14). Plaintiff asserts that "the ALJ's analysis in this domain is virtually silent regarding the majority of [ZAJ's] treatment notes while receiving ABA therapy, and failed to mention the multiple times [ZAJ] refused to work with other classmates, scream at adults, or try to elope from the classroom when becoming upset at others." (*Id.*). Plaintiff notes "the ALJ failed to properly consider observations of Ms. Riggs, who had worked with [ZAJ] for fifteen months at the time she completed her second questionnaire." (*Id.*).

The Court agrees with Plaintiff's arguments. It is unclear how the evidence favorable to ZAJ was overcome by the other evidence relied on by the ALJ. *See Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 488 (7th Cir. 2007) ("[I]t is unclear what evidence the ALJ relied upon in finding that [the child] was not markedly limited in this domain. We require an explanation of why strong evidence favorable to the plaintiff is overcome by the evidence on which an ALJ relies."). Besides failing to include the repeated observations of violence to teachers, peers, and family, the ALJ failed to consider the part of ZAJ's testimony where she refused to testify after a basic question.

Indeed, the ALJ focused heavily on ZAJ's "improvement" over time. The analysis is flawed, however, because it does not accurately account for ZAJ's limitations on a longitudinal basis. *See Taylor ex rel. T.L. v. Colvin*, 2016 WL 6774230, at *10 (N.D. Ill. Nov. 14, 2016) ("An ALJ is obligated to consider a child's limitations on a longitudinal basis and not to decide the issue based on an isolated time frame within the disability period."). The ALJ believed ZAJ's accommodations, therapy, and treatment were helping her to improve, but failed to describe what this meant for ZAJ's functioning relative to her non-disabled peers. "The functional equivalence rules require us to begin by considering how the child functions every day and in all settings *compared to other children the same age who do not have impairments.*" *Johnson o/b/o D.J. v. Berryhill*, 2018 WL 1726422, at *3 (N.D. Ill. Apr. 10, 2018) (quoting SSR09-1p).[3] Accordingly, the Court must remand.

---

[3] The ALJ's decision is not saved by his reliance on the state agency consultants' opinions because they suffer from the same deficiencies as the ALJ.

## II. Evidence that Demonstrates Marked Limitations Caring for Herself and Attending and Completing Tasks

Plaintiff points out that "the ALJ affords very little discussion in [the] [caring] [for] [herself] domain, as he refers to only the questionnaire Ms. Riggs completed and Plaintiff's account of [ZAJ's] difficulties in this area at home." (Doc. 19, p. 16). Similarly, the ALJ's discussion in the attending and completing task domain only refers to the questionnaire completed by Ms. Riggs and ZAJ's grades from the eighth grade.

The Court finds that the ALJ failed to build the required "logical bridge" from the evidence to his conclusions. The ALJ failed to address the evidence in the record when determining what limitations ZAJ has in caring for herself and completing tasks. The record discussed above is replete with evidence that ZAJ lacks control over her behavior, fails to express her feelings in appropriate ways, struggles coping with stress and changes in her environment, engages in self-harming and violent behavior, disobeys classroom instructions, struggles with staying organized, and gets distracted by others. (Docs. 14-4, 14-6, 14-7, 14-8). The ALJ should have analyzed how this evidence related to ZAJ's ability to care for herself and complete tasks. Instead, it appears the ALJ cherrypicked the evidence, and the Court must remand.

### CONCLUSION

The Commissioner's final decision denying Plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff and close this case.

**IT IS SO ORDERED.**

**DATED: August 8, 2022**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**